UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

United States of America,

        Plaintiff,

        v.

Erik Nikkolas Adams-Reading,

        Defendant.

**MEMORANDUM OPINION AND ORDER**
Criminal No. 09-198 ADM/SER

Angela M. Munoz, Assistant United States Attorney, United States Attorney's Office, Minneapolis, Minnesota, on behalf of Plaintiff.

Michael C. Hager, Esq., Hager Law Office, Minneapolis, MN, on behalf of Defendant.

## I. INTRODUCTION

This matter is before the undersigned United States District Judge for a ruling on Defendant Erik Nikkolas Adams-Reading's ("Adams-Reading") Motion for Reduction of Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A) [Docket No. 135] ("Motion"). For the reasons set forth below, the Motion is denied.

## II. BACKGROUND

On January 14, 2011, Adams-Reading entered a plea of guilty to receiving child pornography. See Min. Entry [Docket No. 25]; Plea Agreement [Docket No. 27]. During the course of the investigation of Adams-Reading's case, the Federal Bureau of Investigation recovered from her possession approximately 547 images and 109 video files of child pornography. Presentence Investigation Report ("PSR") ¶ 29. One of the video files of child pornography was recorded by Adams-Reading. Id. The images and video clips showed prepubescent boys being anally penetrated by adult males and prepubescent boys performing

oral sex on adult males, including an image in which a boy's hands and feet are bound together behind his back with a rope. Id. ¶¶ 7–8, 24. One child victim who was related to Adams-Reading was 16 years old when Adams-Reading made the video of him. Id. ¶ 10. Adams-Reading also knew two other child victims, ages 3 and 8 years old, who appeared in the images. Id. ¶ 9.

Adams-Reading was sentenced to a prison term of 90 months and a supervised release term of 15 years. Sentencing J. [Docket No. 36] at 2–3. She was released from prison in December 2016.

Adams-Reading's supervised release has been one of continual non-compliance. The Court first revoked Adams-Reading's supervised release in May 2018 after she was unsuccessfully discharged from sex offender treatment due to her lack of participation, failure to complete assignments, identification with children, denial of the offense, and rude and disrespectful behavior during the treatment process. First Violation Report [Docket No. 64] at 2–3. As a consequence for the first violation, Adams-Reading was sentenced to a 3 month prison term and 15 years' supervised release. Second Sentencing J. [Docket No. 78] at 2.

In November 2018, the Court again revoked Adams-Reading's supervised release after she was unsuccessfully discharged from sex offender treatment due to minimal participation, unwillingness to take responsibility for the offense of conviction, and failure to comply with the polygraph examination requirement. Am. Second Violation Report [Docket No. 90] at 2–3. The Court sentenced Adams-Reading to a prison term of 9 months and a 15-year term of supervised release. Third Sentencing J. [Docket No. 96] at 1–2. Adams-Reading appealed the second revocation and sentence, and the Eighth Circuit affirmed. See United States v. Adams-Reading,

787 F. App'x 355 (8th Cir. 2019).

In January 2020, the Court revoked Adams-Reading's supervised release yet a third time after she was terminated from a Residential Reentry Center ("RRC") for several rule violations, including being in another resident's room without approval, using racist language towards staff, and destroying property at the RRC. Third Violation Report [Docket No. 116] at 2–3; Third Sentencing J. [Docket No. 125] at 1. Adams-Reading's cellular telephone history during this release period showed she had been exchanging text messages with another convicted sex offender. Third Violation Report at 4. Explaining that successive violations required escalating consequences, the Court sentenced Adams-Reading to a prison term of 18 months. Sentencing Tr. [Docket No. 129] at 12; Third Sentencing J. at 2. Adams-Reading appealed the sentence, and the appeal remains pending with the Eighth Circuit Court of Appeals. Notice Appeal [Docket No. 126].

Adams-Reading is incarcerated at Seagoville federal correctional institution in Seagoville, Texas ("FCI–Seagoville"). See Federal Bureau of Prisons Inmate Locator, https://www.bop.gov/inmateloc/ (last visited Oct. 20, 2020).[1] Her projected release date is April 16, 2021. Id.

Adams-Reading now moves for a compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). Adams-Reading, age 36, argues she suffers from obesity, asthma, and cardiomegaly, and that these medical conditions place her at a heightened risk of severe

---

[1] The parties state that Adams-Reading is incarcerated at the Federal Transfer Center in Oklahoma City, Oklahoma ("FTC–Oklahoma City"). See Def. Mot. Reduce Sentence at 1; Gov't Resp. Opp'n [Docket No. 142] at 9. The BOP website shows she is now at FCI–Seagoville. See Federal Bureau of Prisons Inmate Locator, https://www.bop.gov/inmateloc/ (last visited Oct. 20, 2020)

3

illness or death from COVID-19.  Adams-Reading anticipates that if released, she would be required to reside in a supervised group residence.  She requests placement in Minnesota where she would have access to her family and to psychiatric services.

The Government opposes the Motion, arguing the Court lacks jurisdiction to modify Adams-Reading's sentence because the appeal of her 18-month sentence remains pending.  The Government also argues that Adams-Reading has not satisfied the exhaustion requirement for bringing a compassionate release motion.  The Government further argues that Adams-Reading would pose a danger to the community if released and that reducing her sentence would not be consistent with the sentencing factors in 18 U.S.C. § 3553(a).

### III.  DISCUSSION

#### A.  Legal Standard

Generally, a "court may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c).  One of the few exceptions to this general rule is the compassionate release provision of 18 U.S.C. § 3582(c)(1)(A).  Under this provision, a court may reduce a term of imprisonment if, "after considering the factors set forth in section 3553(a)," the court finds that "extraordinary and compelling reasons" warrant a sentence reduction, "and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A).

The Sentencing Commission's applicable policy statement defines "extraordinary and compelling" reasons to include serious medical conditions or cognitive impairments "that substantially diminish[] the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover."

U.S.S.G. § 1B1.13 comment n.1(A)(ii).  The policy statement also requires the court to determine that "[t]he defendant is not a danger to the safety of any other person or to the community" before a sentence reduction may be granted under § 3582(c)(1)(A).  See U.S.S.G. § 1B1.13(2).

A defendant may not bring a motion for compassionate release until after the defendant has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."  18 U.S.C. § 3582(c)(1)(A).

**B. Analysis**

**1. Jurisdiction**

Adams-Reading's pending appeal of her sentence deprives this Court of jurisdiction over her motion for a sentence reduction.  "The filing of a notice of appeal . . . confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal."  Griggs v. Provident Consumer Disc. Co., 459 U.S. 56, 58 (1982).  This prevents situations where "district courts and courts of appeals would both have . . . the power to modify the same judgment."  Id. at 59–60.

Nevertheless, Federal Rule of Criminal Procedure 37(a) provides in part that "[i]f a timely motion is made for relief that the court lacks authority to grant because of an appeal that has been docketed and is pending, the court may . . . deny the motion."  This rule "was expressly contemplated for 'motions under 18 U.S.C. § 3582(c).'"  United States v. Traylor, No. 16-20437, 2020 WL 5405866, at *2 (E.D. Mich. Sept. 9, 2020) (quoting Fed. R. Civ. P. 37(a) advisory committee's note).  Thus, Rule 37(a) "allows district courts to deny, but not to grant, a motion

5

for which it lacks jurisdiction due to a pending appeal." United States v. Martin, No. 18-834-7, 2020 WL 1819961, at *2 (S.D.N.Y. Apr. 10, 2020).

### 2. Exhaustion

The parties dispute whether Adams-Reading has satisfied the exhaustion requirement of 18 U.S.C. § 3582(c)(1)(A) by requesting release from the warden of her facility. Adams-Reading argues the requirement has been met because she made a request for compassionate release more than 30 days ago to the county jailer where she was initially detained. However, Adams-Reading has not provided evidence of this request. Adams-Reading also argues an exception to the exhaustion requirement applies because the county jailer is presumably not authorized to decide on the release of a federal prisoner, and thus is not capable of providing her with administrative relief. This argument ignores that Adams-Reading has been in federal custody since early August 2020 and has not submitted evidence that she requested compassionate release from the warden of her facility. On the record before it, the Court concludes Adams-Reading has not satisfied § 3582(c)(1)(A)'s exhaustion requirement.

### 3. Merits

Even if she could meet the exhaustion requirement, Adams-Reading's Motion would still be denied because the Court cannot conclude that Adams-Reading "is not a danger to the safety of any other person or to the community." See U.S.S.G. § 1B1.13(2). The underlying offense involved the receipt of a significant number of computer files depicting the sexual abuse of children. Adams-Reading's pornography collection included files depicting three minor victims known to her. The disturbing nature of Adams-Reading's offense conduct is compounded by her unwillingness to comply with and participate in sex offender treatment. During each of her three

periods of supervised release, she has failed to make progress in sex offender treatment and has twice been unsuccessfully discharged.  She has also been communicating with another convicted sex offender.  As the Court noted when sentencing Adams-Reading in January 2020, "I find you have manipulated the process, and given some of the behaviors and contacts here, I think you're still a danger to the community."  Sentencing Tr. at 12.

The sentencing factors in § 3553(a) also weigh against reducing Adams-Reading's sentence. These factors include "the nature and circumstances of the offense" and "the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law . . . to provide just punishment for the offense . . . to afford adequate deterrence to criminal conduct," and "to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a).

With regard to the nature and circumstances of the offense, Adams-Reading has repeatedly failed to comply with the terms of her supervised release.  These terms include participating in sex offender treatment aimed at addressing the behavior that led to the underlying offense.  As to the need for the sentence to reflect the seriousness of the offense, provide respect for the law, and afford adequate deterrence, a sentence that escalates the consequences for Adams-Reading's disregard of her release terms is necessary to impress upon her the seriousness of her ongoing violations, to instill respect for the release conditions, and to adequately deter her from future violations.  If Adams-Reading were released after serving only 9 months of her 18-month sentence, the deterrent impact of the Court's increasing consequences would be undermined.

The Court realizes that Adams-Reading's obesity is a condition that has been recognized by the Centers for Disease Control and Prevention ("CDC") as elevating the risk for severe

illness and complications from COVID-19, and that her asthma is a condition that the CDC has recognized as possibly increasing the risk of COVID-19 complications. See CDC, People with Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last accessed Oct. 20, 2020). Additionally, social distancing and other measures for mitigating the risks of contracting COVID-19 are not always possible in a prison environment. Nevertheless, even if these circumstances were to qualify as extraordinary and compelling reasons warranting a sentencing reduction, Adams-Reading's Motion must be denied based on the Court's conclusions that she poses a danger to the community and that reducing her sentence would be inconsistent with the § 3553(a) sentencing factors. See, e.g., United States v. Sims, No. CR18-0262, 2020 WL 2838611, at *5 (W.D. Wash. June 1, 2020) (concluding that even if a prisoner had shown he was eligible for compassionate release due to his compromised medical condition, the court is not required to release him if the prisoner poses a danger to the community); United States v. Sears, No. 19-CR-21, 2020 WL 3250717, at *3 (D.D.C. June 16, 2020) (holding that "despite the fact that COVID-19 and [defendant's] medical condition are extraordinary and compelling reasons to grant his motion for compassionate release, section 3553(a)'s purposes of punishment require maintenance of the original prison term") (internal quotations omitted).

## IV.  CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendant Erik Nikkolas Adams-Reading's Motion for Reduction of Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A) [Docket No. 135] is **DENIED**.

BY THE COURT:


    s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT COURT

Dated:  October 20, 2020